# <u>Exhibit 1</u>

Return Date: No return date scheduled
Hearing Date: 8/30/2019 10:00 AM - 10:00 AM
Courtroom Number: 2405
Location: District 1 Court
    Cook County, IL

*Sheriff Walber*
*served u(am, CZ*

MAY 2 3 2019

FILED
5/2/2019 12:07 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH05545

4907077

FILED DATE: 5/2/2019 12:07 PM 2019CH05545

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Gail Gray

_____ (Name all parties)

v.

The University of Chicago Medical Center, Inc.

Case No. _____ 2019-CH-05545 _____

☒ **SUMMONS** ☐ **ALIAS SUMMONS**

To each Defendant:

The University of Chicago
Medical Center, Inc.
C/O: John Satalic
5841 S. Maryland
Chicago, IL 60637

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 1 of 3

**Summons - Alias Summons**                                 **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first
create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm
to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://
www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: __43734__                    Witness: _____

Atty. Name: __Catherine T. Mitchell (Stephan Zouras)__

Atty. for: __Gail Gray__                **5/2/2019 12:07 PM DOROTHY BROWN**

Address: __100 N. Riverside Plaza, Suite 2150__      DOROTHY BROWN, Clerk of Court

City: __Chicago__

State: __IL__    Zip: __60606__         Date of Service: _____
                                     (To be inserted by officer on copy left with

Telephone: __312-233-1550__         Defendant or other person):

Primary Email: __cmitchell@stephanzouras.com__

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

FILED DATE: 5/2/2019 12:07 PM 2019CH05545

FILED DATE: 5/2/2019 12:07 PM   2019CH05545

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

Return Date: No return date scheduled
Hearing Date: 8/30/2019 10:00 AM - 10:00 AM
Courtroom Number: 2405
Location: District 1 Court
    Cook County, IL

FILED
5/2/2019 12:07 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH05545

4907077

FILED DATE: 5/2/2019 12:07 PM 2019CH05545

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| **Summons - Alias Summons** | |

(08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Gail Gray

(Name all parties)

v.

The University of Chicago Medical Center, Inc.

Case No.    2019-CH-05545

The University of Chicago
Medical Center, Inc.
C/O: John Satalic
5841 S. Maryland
Chicago, IL 60637

☒ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

**Summons - Alias Summons**                                    (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first
create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm
to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://
www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: __43734__                          Witness: _____

Atty Name: Catherine T. Mitchell (Stephan Zouras)
                                              5/2/2019 12:07 PM DOROTHY BROWN
Atty. for: __Gail Gray__                      DOROTHY BROWN, Clerk of Court

Address: __100 N. Riverside Plaza, Suite 2150__

City: __Chicago__                             Date of Service _____
                                              (To be inserted by officer on copy left with
State: __IL__   Zip: __60606__                Defendant or other person):
Telephone: __312-233-1550__

Primary Email: __cmitchell@stephanzouras.com__

FILED DATE: 5/2/2019 12:07 PM   2019CH05545

FILED DATE: 5/2/2019 12:07 PM   2019CH05545

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 8/30/2019 10:00 AM - 10:00 AM
Courtroom Number: 2405
Location: District 1 Court
    Cook County, IL

FILED
5/2/2019 10:26 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH05545

4904039

FILED DATE: 5/2/2019 10:26 AM 2019CH05545

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| GAIL GRAY, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 2019CH05545 |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER, INC., | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff, Gail Gray, brings this Complaint ("Complaint"), by and through her attorneys, individually and on behalf of all others similarly situated (the "Class"), brings the following Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against The University of Chicago Medical Center, Inc. ("Defendant") to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiff's sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.    Defendant, The University of Chicago Medical Center, Inc., at all relevant times, was a duly registered corporation doing business within the state of Illinois, organized and existing under the laws of the state of Illinois, and had its principal place of business in Chicago, Illinois. Defendant is a corporation in the business of providing health care services.

2.    Omnicell Inc. ("Omnicell") provides biometric devices and software to Defendant.

1

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

3.      When Defendant hires an employee, he or she is enrolled in an employee database. Defendant uses the employee database to monitor authorized access to stored materials (*i.e.* – medications) by its employees.

4.      Defendant's employees are required to have their hand prints scanned by a biometric device in order to gain authorized access to stored materials.

5.      For example, Defendant uses medication dispensing systems (*i.e.* – Omnicell) that require workers to scan a hand print before gaining access to stored materials.

6.      Unlike identification badges – which can be changed or replaced if stolen or compromised – hand prints are unique, permanent biometric identifiers associated with each employee. This exposes Defendant's employees to serious and irreversible privacy risks. For example, if a database containing hand prints or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Yahoo, eBay, Equifax, Uber, Home Depot, MyFitnessPal, Panera, Whole Foods, Chipotle, Omni Hotels & Resorts, Trump Hotels and Facebook/Cambridge Analytica data breaches – employees have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this highly personal and private information.

7.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., Cybersecurity Incidents (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

8.      An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including hand prints, iris scans, and a facial photograph – of over a billion

2

FILED DATE: 5/2/2019 10:26 AM 2019CH05445

Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft,* The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259f138.

9. In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details,* The Tribune (Jan. 4, 2018), available at http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

10. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate the collection and storage of Illinois citizens' biometrics, such as hand prints.

11. Despite this law, Defendant disregards its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it did not and continues not to:

      a.     Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their hand prints were being collected, stored, and used, as required by BIPA;

      b.     Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly situated individuals' hand prints, as required by BIPA; and

      c.     Receive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their hand prints, as required by BIPA.

FILED DATE: 5/2/2019 10:26 AM 2019CH05545

          d.      Obtain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their hand prints to a third party, as required by BIPA.

12.      Plaintiff and other similarly situated individuals are aggrieved because they were not: (1) informed in writing of the purpose and length of time for which their hand prints were being collected, stored, disseminated and used; (2) provided a publicly available retention schedule or guidelines for permanent destruction of the biometric data; and (3) provided (nor did Defendant execute) a written release, as required by BIPA.

13.      Additionally, Plaintiff and the class members are aggrieved because Defendant improperly discloses employees' biometric data to out-of-state third-party vendors in violation of BIPA.

14.      Upon information and belief, Defendant improperly discloses employees' biometric data to at least one third-party vendor, Omnicell, and likely others.

15.      Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly situated individuals' biometric data and has not and will not destroy their biometric data as required by BIPA.

16.      Plaintiff and other similarly situated individuals are aggrieved by Defendant's failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interactions with the company.

17.      Plaintiff and other similarly situated individuals have suffered an injury in fact based on Defendant's violations of their legal rights.

18.      Accordingly, Plaintiff, on behalf of herself as well as the putative Class, seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the

unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

**PARTIES**

19.     Plaintiff Gail Gray is a natural person and a citizen of the State of Illinois.

20.     Defendant, The University of Chicago Medical Center Inc., at all relevant times, was a duly registered corporation doing business within the state of Illinois, organized and existing under the laws of the state of Illinois, and had its principal place of business in Chicago, Illinois.

**JURISDICTION AND VENUE**

21.     This Court has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209 because it conducts business transactions in Illinois, have committed tortious acts in Illinois, and is registered to conduct business in Illinois.

22.     Venue is proper in Cook County because Defendant conducts business in Cook County.

**FACTUAL BACKGROUND**

**I.     The Biometric Information Privacy Act.**

23.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

24.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

suddenly there was a serious risk that millions of hand print records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

25.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

26.    Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

27.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.    Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b.    Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

6

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

        c.     Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

28.     Biometric identifiers include retina and iris scans, voiceprints, finger scans and face geometry, and – most importantly here – hand scans. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

29.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosures. *See* 740 ILCS 14/15(d)(1).

30.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

31.     Compliance with BIPA is straightforward, and the necessary disclosures and written release can be achieved easily through a single, signed sheet of paper. BIPA's requirements bestow upon individuals a right to privacy in their biometrics, as well as the right to make informed decisions when electing to provide or withhold their most sensitive information and the terms upon which they do so.

FILED DATE: 5/2/2019 10:26 AM  2019CH05545

32.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

33.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics.  BIPA also protects individuals' rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

34.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**II.     Defendant Violates the Biometric Information Privacy Act.**

35.     By the time BIPA passed through the Illinois Legislature in mid-2008, most companies who had experimented with using workers' biometric data as an authentication method stopped doing so.

36.     However, Defendant failed to take note of the shift in Illinois law governing the collection, use and dissemination of biometric data. As a result, Defendant continues to collect, store, use and disseminate its employees' biometric data in violation of BIPA.

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

37.     Specifically, when employees are hired, Defendant requires them to have their hand prints scanned to enroll them in Defendant's Omnicell database(s).

38.     Defendant uses an authentication system that requires employees to use their hand print as a means of authentication to gain access to stored materials. Thus, employees have to use their hand prints multiple times each day whenever they need to access these materials to perform their job duties.

39.     Upon information and belief, Defendant fails to inform its employees that it discloses employees' hand print data to at least one out-of-state third-party vendor, Omnicell; fails to inform its employees of the purposes and duration for which it collects employees' sensitive biometric data; and fails to obtain written releases from employees before collecting their hand prints.

40.     Nor does Defendant provide employees with a written, publicly available policy identifying their retention schedule and guidelines for permanently destroying their hand prints when the initial purpose for collecting or obtaining their hand prints is no longer relevant, as required by BIPA.

41.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent Equifax and Uber data breaches, highlight why conduct such as Defendant's – where individuals are aware that they are providing a hand print, but not aware of to whom or for what purposes they are doing so – is dangerous. The Pay by Touch bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a hand print, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Defendant disregards these obligations and Plaintiffs' statutory rights. Instead, Defendant unlawfully collects, stores, uses and

disseminates Plaintiffs' biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

42.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and other similarly situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the worker's last interactions with the company.

43.     Plaintiffs are not told what might happen to their biometric data if and when Defendant merges with another company, or worse, if and when Defendant's entire organization folds.

44.     Since Defendant neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection of biometric data, Defendant's employees have no idea whether Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

45.     These violations have raised a material risk that Plaintiff and other similarly situated individuals' biometric data will be unlawfully accessed by third parties.

46.     By and through the actions detailed above, Defendant disregards Plaintiff's and other similarly situated individuals' legal rights in violation of BIPA.

III.    **Plaintiff Gail Gray's Experience**

47.     Plaintiff worked for Defendant as a registered nurse from April 2008 to November 2018.

48.      As a condition of her employment, Plaintiff was required to scan her hand print so Defendant could use it as an authorization method to allow access to stored materials, namely medications, to administer to patients.

49.      Upon information and belief, Defendant subsequently stored Plaintiff's biometric data in its database(s).

50.      Each time Plaintiff needed to gain access to stored materials, she was required to scan her hand print.

51.      Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collected, stored, used and/or disseminated her biometric data.

52.      Plaintiff has never been informed of any biometric data retention policy developed by Defendant, nor has she ever been informed of whether Defendant will ever permanently delete her biometric data.

53.       Plaintiff has never been informed that her biometric data was being shared with Omnicell, and/or any other third-party vendors.

54.      Plaintiff has never been provided with, nor ever signed, a written release allowing Defendant to collect, store, use or disseminate her biometric data.

55.      Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

56.      Unlike a social security number that can be changed, no amount of time or money can compensate Plaintiff if her biometric data is compromised by the lax procedures through which Defendant captured, stored, used, and disseminated her and other similarly situated individuals' biometrics. Plaintiff would not have provided her biometric data to Defendant if she had known that it would retain such information for an indefinite period of time without her consent.

11

57.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.,* 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act"). Nonetheless, Plaintiff has been aggrieved because she suffered an injury-in-fact based on Defendant's violations of her legal rights. Defendant intentionally interfered with Plaintiff's right to possess and control her own sensitive biometric data. Additionally, Plaintiff suffered an invasion of a legally protected interest when Defendant secured her personal and private biometric data at a time when it had no right to do so, a gross invasion of her right to privacy. BIPA protects employees like Gray from this precise conduct. Defendant has no lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

58.     Plaintiff also suffered an injury in fact because Defendant improperly disseminated her biometric identifiers and/or biometric information to third parties, including but not limited to Omnicell, and any other third party that hosted the biometric data in their data centers, in violation of BIPA.

59.     Plaintiff's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Plaintiff was not sufficiently compensated by Defendant for its retention and use of her biometric data. Plaintiff would not have agreed to work for Defendant for the compensation she received if she had known that it would retain her biometric data indefinitely and disseminate it to Omnicell without adequate compensation to Plaintiff.

60.     Plaintiff also suffered an informational injury because Defendant failed to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

has created both a right and an injury. An employee has the right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data. Conversely, the employee suffers injury when he or she does not receive this extremely critical information.

61.     Pursuant to 740 ILCS 14/15(b), Plaintiff was entitled to receive certain information prior to Defendant securing her biometric data. Namely, Plaintiff was entitled to information advising her of the specific limited purpose(s) and length of time for which Defendant collects, stores, uses and disseminates her private biometric data; information regarding Defendant's biometric retention policy; and, a written release allowing each Defendant to collect, store and use her private biometric data. By depriving Plaintiff of this information, Defendant injured her. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

62.     Finally, as a result of Defendant's conduct, Plaintiff has experienced personal injury in the form of mental anguish. For example, Plaintiff experiences mental anguish and injury when contemplating what would happen to her biometric data if the Defendant went bankrupt, whether the Defendant will ever delete her biometric information, and whether (and to whom) the Defendant will ever share her biometric information.

63.     Plaintiff has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of her biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendant's policies and practices; in the form of the unauthorized disclosure of her confidential biometric data to third parties; and in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

FILED DATE: 5/2/2019 10:26 AM 2019CH05545

64.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶

## CLASS ALLEGATIONS

65.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on her own behalf and as a representative of all other similarly situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

66.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

67.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, for the following class of similarly situated workers under BIPA:

**All individuals working for Defendant in the State of Illinois who had their hand prints collected, captured, received, obtained, maintained, stored or disclosed by Defendant during the applicable statutory period.**

68.     This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

C.      The claims of the Plaintiff are typical of the claims of the class; and,

D.      The Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

69.    The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Defendant's database.

## Commonality

70.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but not limited to the following:

A.      Whether Defendant collected, captured or otherwise obtained Plaintiff's and the Class' biometric identifiers or biometric information;

B.      Whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, storing and disseminating their biometric identifiers or biometric information;

C.      Whether Defendant obtained a written release (as defined in 740 ILCS § 14/10) to collect, use, store and disseminate Plaintiff's and the Class' biometric identifiers or biometric information;

D.      Whether Defendant has disclosed or re-disclosed Plaintiff's and the Class' biometric identifiers or biometric information;

E.      Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class' biometric identifiers or biometric information;

F.      Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of its last interaction with the individual, whichever occurs first;

G.      Whether Defendant complies with any such written policy (if one exists);

15

FILED DATE: 5/2/2019 10:26 AM 2019CH05545

H.      Whether Defendant used Plaintiff's and the Class' hand prints to identify them;

I.      Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.      Whether the violations of BIPA were committed negligently;

K.      Whether the violations of BIPA were committed intentionally and/or recklessly

71.    Plaintiff anticipates that Defendant will raise defenses that are common to the class.

### Adequacy

72.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

### Typicality

73.    The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

74.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

### Predominance and Superiority

75.    The common questions identified above predominate over any individual issues,

16

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

76.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of BIPA Section 15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the

FILED DATE: 5/2/2019 10:26 AM    2019CH05545

company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

79.     Defendant fails to comply with these BIPA mandates.

80.     Defendant is registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

81.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their hand prints), as explained in detail in Section II, *supra*. *See* 740 ILCS 14/10.

82.     Plaintiff's and the Class' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

83.     Defendant has failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

84.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class' biometric data and has not and will not destroy Plaintiff's or the Class' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of personnel's' last interactions with the company.

85.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or,

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Violation of BIPA Section 15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information

86.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.    BIPA requires companies to obtain informed written consent from workers before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

88.    Defendant fails to comply with these BIPA mandates.

89.    Defendant is registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

90.    Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their hand prints), as explained in detail in Section II, *supra*. *See* 740 ILCS 14/10.

91.    Plaintiff's and the Class' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

19

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

92.     Defendant systematically and automatically collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

93.     Defendant did not inform Plaintiff in writing that her biometric identifiers and/or biometric information were being collected, stored, used, and disseminated, nor did Defendant inform Plaintiff in writing of the specific purpose and length of term for which her biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

94.     By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

95.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## THIRD CAUSE OF ACTION
### Violation of BIPA Section 15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent

96.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

20

FILED DATE: 5/2/2019 10:26 AM  2019CH05545

97.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

98.     Defendant fails to comply with this BIPA mandate.

99.     Defendant is registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

100.    Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their hand prints), as explained in detail in Section II, *supra*. *See* 740 ILCS 14/10.

101.    Plaintiff's and the Class' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

102.    Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

103.    By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

104.    On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or,

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3)

## PRAYER FOR RELIEF

Wherefore, Plaintiff Gail Gray respectfully requests that this Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Gail Gray as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.  Declaring that Defendant's actions, as set forth above, violate BIPA;

C.  Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.  Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers or biometric information in compliance with BIPA;

F.  Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.  Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Date:  May 2, 2019                Respectfully Submitted,

*/s/ Catherine T. Mitchell*

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell

22

FILED DATE: 5/2/2019 10:26 AM   2019CH05545

**STEPHAN ZOURAS, LLP**
100 North Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

**ATTORNEYS FOR PLAINTIFF**

23

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on May 2, 2019, I electronically filed the attached with

the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.


/s/ Catherine T. Mitchell

FILED DATE: 5/2/2019 10:26 AM 2019CH05545