# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GAIL GRAY, individually, and on behalf of all others similarly situated </br></br>Plaintiffs,</br></br>v.</br></br>THE UNIVERSITY OF CHICAGO MEDICAL CENTER, INC.,</br></br>Defendants. | Case No. 19-cv-04229</br></br>Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

For the reasons set forth below, Defendant's motion to dismiss for lack of subject matter jurisdiction [20] is granted. Plaintiff's first amended complaint is dismissed without prejudice, and Plaintiff is given until May 1, 2020 to file a second amended complaint correcting the jurisdictional deficiencies identified here, if she can do so consistent with Federal Rule of Civil Procedure 11. If no second amended complaint is filed on or before May 1, 2020, the Court will enter final judgment under Federal Rule of Civil Procedure 58 and close the case. Defendant's motion to dismiss under Rule 12(b)(6) [17] is stricken without prejudice as moot. If Plaintiff files an amended complaint, the Court will set this case for a further status hearing shortly thereafter.

**I.     Background**

Plaintiff Gail Gray ("Plaintiff") worked as a registered nurse for Defendant University of Chicago Medical Center ("UCMC" or "Defendant.") from April 2008 to November 2018. Her duties included using an Omnicell medication dispensing machine, which required employees to use their handprints as a means of authentication to access the medication. [21-1, at ¶ 32.] Plaintiff alleges that Defendant's use of the Omnicell machines and its policies and practices surrounding

handprint scans violate the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/5 to 14/25, because Defendant did not (1) obtain written consent from employees before collecting employees' handprints, (2) provide a written policy identifying a retention schedule and guidelines for destroying handprint data, (3) inform employees that it disclosed the handprint data to Omnicell (a third party), and (4) inform employees of the purpose and duration of storing the handprint data. [*Id*. at ¶¶ 33-34.]

While an employee of UCMC, Plaintiff was a member of and was represented by a nurses' union, National Nurses United/National Nurses Organizing Committee ("the Union"). [21-2, at ¶ 5.] The Union was the exclusive bargaining agent for Plaintiff and other similarly situated employees for purposes of collective bargaining with UCMC regarding their wages, benefits, and all other terms and conditions of their employment. *Id*. The terms and conditions of employment agreed to by UCMC and the Union are governed by a collective bargaining agreement ("CBA"). [*Id*. at 6.] The CBA contains management-rights provisions that specify UCMC's right to manage the medical center and clinics, including that "control of the premises, and the direction of the nursing force are vested exclusively in" UCMC. [21-2, at 15-16.] The CBA expressly recognizes that UCMC's "right to manage includes, but is not limited to, the following: * * * to determine policies and procedures with respect to patient care; to determine or change the methods and means by which its operations are to be carried on; to establish and revise reasonable personnel rules and policies, including those related to employee conduct (which right shall not be exercised in an arbitrary or capricious manner and shall be subject to the grievance and arbitration provision of this Agreement); to carry out all ordinary functions of management * * *" [*Id.*]. Pursuant to the CBA, when a Union member and UCMC disagree "regarding the interpretation or application of any of the terms of" the CBA, the Union member must utilize the grievance and arbitration

procedures set forth in the CBA. [*Id*. at 38-40.] The grievance procedure has four steps culminating in binding arbitration. [*Id*. at 39-40.]

Plaintiff's claims arise under the Biometric Information Privacy Act, 740 ILCS 14/5 to 14/25, which Illinois adopted in 2008. As the Seventh Circuit noted in *Miller v. Sw. Airlines Co*, this law applies to all biometric identifiers, which the statute defines to include any "scan of hand." 926 F.3d 898, 900–01 (7th Cir. 2019) (citing 740 ILCS 14/10). Before obtaining any handprint, a "private entity" must inform the subject or "the subject's legally authorized representative" in writing about several things, such as the purpose of collecting the data and how long they will be kept, and obtain the consent of the subject or authorized representative. 740 ILCS 14/15(b). The private entity also must establish and make available to the public a protocol for retaining and handling biometric data, which must be destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). Sales of biometric information are forbidden, 740 ILCS 14/15(c), and transfers are limited, 740 ILCS 14/15(d). Private entities must protect biometric information from disclosure. 740 ILCS 14/15(e).

Plaintiff brought a purported class action BIPA lawsuit against UCMC in the Circuit Court of Cook County, Illinois. See [21-1.] Defendant removed the case to the Northern District of Illinois. See [1]. Defendant now moves to dismiss for lack of subject matter jurisdiction [20].

## II. Legal Standard

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review

for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See *id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. See *Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

## III. Analysis

Defendant argues that Plaintiff's state-law BIPA claims are preempted by Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) ("LMRA"). Section 301 preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). "If the resolution of a state law claim depends on the meaning of, or requires interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996); see also *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013) (Section 301 preemption "covers not only obvious disputes over labor contracts, but also any claim masquerading as a state-law claim that nevertheless is deemed 'really' to be a claim under a labor contract"). A state law claim "requires the interpretation of a collective bargaining agreement" when an element of the claim "requires a court to interpret any

4

term of a collective-bargaining agreement." *Healy v. Metro. Pier & Exposition Auth.,* 804 F.3d 836, 841 (7th Cir. 2015) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

*Miller v. Sw. Airlines Co.*, 926 F.3d 898 (7th Cir. 2019), in which the Seventh Circuit found that BIPA claims are preempted when they require interpretation of a collective bargaining agreement, controls the Court's decision in this case. In *Miller*, the plaintiff brought BIPA claims against his employer, Southwest, over its timekeeping system, which required employees to use fingerprints to clock in and out. Southwest moved to dismiss, arguing that it had provided the plaintiff's union with the required notice and that the union consented to the use of the fingerprint system, either expressly or through the collective bargaining agreement's management rights clauses. The Seventh Circuit began its analysis with the premise that disputes over the interpretation or administration of a collective bargaining agreement with an airline must be resolved by an adjustment board under the Railway Labor Act ("RLA"). *Id* at 903. Southwest had a collective bargaining agreement and asserted that the union had notice and had consented to the fingerprint timekeeping system, and that clocking in and out was a proper subject of negotiation between a union and an employer. *Id.* As the court of appeals noted, under federal law, the union was the exclusive bargaining agent for the workers. Thus, the court rejected the plaintiff's argument that the union was not his "legally authorized representative" for BIPA purposes and upheld the district court's dismissal on preemption grounds because the plaintiff's claims "necessarily entail[ed] the interpretation or administration of the collective bargaining agreement." *Id.* at 904.

The rule and reasoning of *Miller* apply to the LMRA because the RLA preemption standard is "virtually identical to the pre-emption standard the Court employs in cases involving § 301 of

5

the LMRA." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). This is illustrated by a recent Northern District of Illinois case quite similar to the one before this Court. In *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202 (N.D. Ill. Feb. 26, 2020), a union-member plaintiff sued his employer, Bimbo Bakeries, over its timekeeping system, which required a fingerprint to clock in and out. The plaintiff brought claims for "(1) Bimbo's failure to institute, maintain, and adhere to a publicly available retention schedule in violation of BIPA § 15(a); (2) Bimbo's failure to obtain informed, written consent before obtaining biometric information in violation of BIPA § 15(b); and (3) Bimbo's disclosure of biometric information before obtaining consent in violation of BIPA § 15(d)." *Id*. at *1.[1] The defendant moved to dismiss for lack of subject matter jurisdiction, arguing (among other things) that Section 301 of the LMRA preempted the plaintiff's claims. *Id*. at *3. The defendant asserted that it had a collective bargaining agreement with the plaintiff's union, that the agreement set wage tables for employees, and that the agreement gave it certain management rights, including "to make and enforce reasonable plant rules of conduct and regulations not inconsistent with the provisions" of the CBA, "to introduce new and improved methods, materials, equipment or facilities," and "to change or eliminate existing methods, materials, equipment, or facilities." *Id*. at *2. The defendant argued that the complaint's BIPA claims required interpretation of the collective bargaining agreement, including the management rights provisions. The complaint also alleged that the plaintiff had been insufficiently compensated as a result of the BIPA violations, which the defendant said implicated the

---

[1] These allegations are strikingly similar to those set out in Plaintiff's amended complaint, which alleges that UCMC violated BIPA by failing (1) to "[p]rovide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly situated individuals' hand prints," (2) to "[p]roperly inform * * * [and] [r]eceive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their hand prints," and (3) to "[o]btain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their hand prints to a third party." [21-1, at ¶11.]

agreement's wage provisions. *Id.* at *3. Finally, because the plaintiff did not submit any grievance or request for arbitration as the agreement required, the defendant contended that the plaintiff failed to comply with Section 301's procedural requirements, mandating dismissal of the claims. *Id.* at *3.

Based on those allegations, Judge Ellis concluded that *Miller* controlled because the RLA preemption standard is virtually identical to the preemption standard the Court employs in cases involving § 301 of the LMRA. *Peatry,* 2020 WL 919202, at *3 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994)). Then, applying *Miller* to "almost identical" facts, she determined that the plaintiff's BIPA claims arising during the time that the CBA was in effect required interpretation of the collective bargaining agreement and thus were preempted by Section 301 of the LMRA. *Id.* Accordingly, she granted the defendant's motion to dismiss as to those claims. *Id.*[2]

Here, Plaintiff challenges Defendant's use of, and practices and policies surrounding, a medication-dispensing machine that requires employees to scan their handprints in order to access it. Plaintiff alleges that that UCMC violated BIPA by failing (1) to "[p]rovide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly situated individuals' hand prints," (2) to "[p]roperly inform * * * [and] [r]eceive a written release from Plaintiff and others similarly situated to collect, store, disseminate or otherwise use their hand prints," and (3) to "[o]btain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their hand prints to a third party." [21-1, at ¶11]. While an employee at UCMC, Plaintiff was a member of a union, the National Nurses United/National

---

[2] Some claims predated the collective bargaining agreement. The court determined found that *Miller* did not apply to those claims and Section 301 did not preempt them. *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 WL 919202, at *4 (N.D. Ill. Feb. 26, 2020).

Nurses Organizing Committee (the "Union"). [21-2, at 5.] The Union had a collective bargaining agreement with Defendant, and the union was the "legally authorized representative" of Plaintiff for BIPA purposes. See *Miller*, 926 F.3d at 903 ("We reject plaintiffs' contention that a union is not a 'legally authorized representative' for [BIPA purposes]."). Defendant submits that it gave the required notice of the handprint scans to the union, and that the union consented to use of handprint scans. [21, at 6-7.]

In these circumstances, the Seventh Circuit's guidance makes clear that Plaintiff's claims require interpretation of the CBA—at the very least its management rights clause. *Miller*, 926 F.3d at 903. Furthermore, the amended complaint asserts a claim for insufficient compensation ([21-1, at ¶ 53]), which implicates the CBA's wage provisions (though Plaintiff offers to amend the complaint again and strike this allegation, see [28, at 11-12]). Under *Miller* and for the reasons stated in *Peatry*, Plaintiff's claims under BIPA are preempted by Section 301 of the LMRA and must be dismissed. *Miller*, 926 F.3d at 904; *Peatry*, 2020 WL 919202, at *4; see also *Mazya v. Northwestern Lake Forest Hospital, et. al.*, No. 19-cv-3191, Dkt. Entry [39] (N.D. Ill. June 19, 2019) ("By agreement, and in light of *Miller v. Southwest Airlines Co.*, No. 18-3476, et al. (7th Cir. June 13, 2019), Defendants' motions to dismiss [14] [17] [20] are granted in part (as to the claims of Plaintiff Taylor) * * *. The claims of Plaintiff Taylor are dismissed, either for want of subject matter jurisdiction under Rule 12(b)(1) or on the pleadings under Rule 12(c), without prejudice to Taylor's claims being pursued before the governing CBA's grievance and arbitration process."); *Johnson v. United Air Lines, Inc.*, 2018 WL 3636556, at *3 (N.D. Ill. July 31, 2018), (vacated on other grounds) (dismissing BIPA claims because "the RLA preempts the action and mandates use of the arbitration provisions set forth under the CBA and in doing so strips this Court of subject matter jurisdiction").

Plaintiff's argument that dismissal will leave her without a forum to vindicate her alleged injuries is unavailing. The initial forum for Plaintiff to bring her claims was specified in the grievance procedures laid out in the CBA. [21-2, at 38-40.] There is no evidence before the Court that Plaintiff followed those procedures, and Plaintiff's response brief suggests that she did not. See [28, at 8-9.]. But even if the grievance procedures were not available for whatever reason, this Court has no authority to confer subject matter jurisdiction on itself in order to entertain Plaintiff's case. In fact, the Seventh Circuit has already rejected this type of "remedial gap" argument. *Healy*, 804 F.3d at 845 ("Plaintiffs argue that § 301's general preemption rules and MPEA's immunity from § 301 claims leave them without a remedy against a third-party like MPEA. We can only acknowledge that this "remedial gap" exists, and hold that we cannot create a remedy where precedent forbids us from doing so.") (citing *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993)).

Because Section 301 preempts Plaintiff's claims, the Court must determine the appropriate disposition. The Supreme Court has stated that a preempted state law claim "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Employees must exhaust administrative remedies before bringing suit in federal court unless certain exceptions apply. See *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001). The allegations in the amended complaint do not allow the Court to treat her claims as Section§ 301 claims, and it appears that she did not properly exhaust her administrative remedies. This suggests that dismissal is the appropriate disposition. However, the Court cannot be sure, based on the information currently before it, that there are no other facts Plaintiff can plead that would allow the Court to conclude it has subject matter jurisdiction. Accordingly, the dismissal of Plaintiff's amended complaint will be without prejudice

and with leave to amend one last time should Plaintiff believe she can do so consistent with Rule 11. See *Peatry*, 2020 WL 919202 at *4.

Finally, Plaintiff's supplemental authority, *Rogers v. BNSF Railway Co.*, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019), is distinguishable. *Rogers* analyzes whether BIPA interfered or conflicted with the subject matter of three federal statutes—the Interstate Commerce Commission Termination Act ("ICCTA"), the Federal Aviation Administration Authorization Act ("FAAAA"), and the Federal Railroad Safety Act ("FRSA")—all of which contain express preemption clauses. *Rogers*, 2019 WL 5635180, at *2. This case does not concern the ICCTA, FAAAA, or the FRSA, and *Rogers* does not address the LMRA or even the RLA, and therefore is not applicable to this case.

## IV.  Conclusion

For the reasons set forth above, Defendant's motion to dismiss for lack of subject matter jurisdiction [20] is granted. Plaintiff's first amended complaint is dismissed without prejudice, and Plaintiff is given until May 1, 2020 to file a second amended complaint correcting the jurisdictional deficiencies identified here, if she can do so consistent with Federal Rule of Civil Procedure 11. If no second amended complaint is filed on or before May 1, 2020, the Court will enter final judgment and close the case. Defendant's motion to dismiss under Rule 12(b)(6) [17] is stricken without prejudice as moot. If Plaintiff files an amended complaint, the Court will set this case for a further status hearing shortly thereafter.

Dated: March 26, 2019

Robert M. Dow, Jr.
United States District Judge