**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GAIL GRAY, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 19-cv-04229 |
| v. | ) ) | |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER, INC., | ) ) ) | |
| Defendant. | ) ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff, Gail Gray, brings this Second Amended Class Action Complaint ("Complaint"), on behalf of herself and all others similarly situated (the "Class"), by and through her attorneys, against The University of Chicago Medical Center, Inc. ("Defendant") its subsidiaries and affiliates to redress and curtail Defendant's violations of the Illinois Biometric Information Privacy Act. Plaintiff alleges as follows upon personal knowledge as to herself, her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.    Defendant The University of Chicago Medical Center, Inc. is a corporation in the business of providing health care services.

2.    Plaintiff was employed by Defendant as a Registered Nurse from April of 2008 to November of 2018.

1

3.    While Plaintiff was employed, Defendant purchased and/or leased biometric medication dispensing devices and software from Omnicell, Inc. that were placed throughout Defendant's the healthcare facilities.

4.    While employed, Plaintiff and other workers were directed to scan their handprints into Defendant's medication dispensing devices to be enrolled in Defendant's database, which Defendant used to monitor authorized access to the software and/or stored materials within the medication dispensing devices.

5.    While employed, Plaintiff and other workers scanned their handprints in Defendant's biometric medication dispensing devices each time they needed to gain access to the software and/or stored materials within.

6.    Handprints are unique, permanent biometric identifiers associated with each individual.

7.    Even though Plaintiff separated from her employment with Defendant in November of 2018, and no longer has authorization to access any of Defendant's biometric medication dispensing devices, Defendant continues to possess her handprint data.

8.    Recognizing that unique biometric identifiers, such as handprints, cannot be changed or replaced if stolen or compromised, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, to regulate private entities from collecting, storing, using, possessing or disseminating a person's biometric identifiers and information without adhering to BIPA's strict informed-consent requirements.

9.    Defendant disregards individuals' statutorily protected privacy rights and continues to possess Plaintiff's and other similarly-situated individuals' unique biometric identifiers or information without following the requirements of BIPA.

2

10.     Despite this law, Defendant disregards Plaintiff's and other former employees' statutorily protected privacy rights by unlawfully possessing their biometric data in violation of BIPA. Specifically, Defendant has violated and continues to violate BIPA because it did not and continues not to develop, implement and adhere to a publicly-available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly situated individuals' handprints, as required by Section 15(a) of BIPA.

11.     Accordingly, Plaintiff, on behalf of herself as well as the putative Class, seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

12.     Plaintiff Gail Gray is a natural person and a citizen of the State of Illinois.

13.     Defendant, The University of Chicago Medical Center Inc., is a corporation organized and existing under the laws of the state of Illinois, and has its principal place of business in Chicago, Cook County, Illinois.

## JURISDICTION AND VENUE

14.     Plaintiff originally filed this matter in the Circuit Court of Cook County, Illinois, Chancery Division on May 2, 2019, captioned *Gail Gray v. The University of Chicago Medical Center, Inc.*, Case No. 2019 CH 05545. The Circuit Court of Cook County has jurisdiction over Defendant pursuant to 735 ILCS § 5/2-209, because all Parties are citizens of the State of Illinois, Defendant conducts business transactions in Illinois, has committed tortious acts in Illinois, and is registered to conduct business in Illinois.

15.     On June 24, 2019, Defendant removed this action to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

16.     Venue is proper in Cook County because Defendant conducts business in Cook County.

## THE BIOMETRIC INFORMATION PRIVACY ACT

17.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

18.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of hand print records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

19.     The Illinois legislature decided that the public would benefit from "regulations on the collection, use, safeguarding, handling, storage, retention, and description of biometric

identifiers and information," and enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5(f)-(g).

20.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

21.     BIPA does not render illegal the actual collection, obtainment, use, storage, or dissemination of biometric identifiers or biometric information. Rather, BIPA is an informed consent statute that requires a private entity—before collecting, capturing or otherwise obtaining an individual's biometric identifiers and/or biometric information—to:

a.     Inform the individual in writing that a biometric identifier or biometric information is being collected, obtained, or stored;

b.     Inform the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, obtained, stored, and used;

c.     Receive a written release from the individual to collect, obtain, store, and/or disseminate his or her biometric identifiers or biometric information.

*See* 740 ILCS 14/15(b).

22.     Biometric identifiers include scans of hand geometry, and biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See* 740 ILCS 14/10.

23.     BIPA also requires private entities in possession of biometric identifiers and information to develop, adhere to and comply with a written policy or policies, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or

information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

24.     Compliance with BIPA is straightforward, and the necessary disclosures and written release can be achieved easily through a single, signed sheet of paper. BIPA's requirements bestow upon individuals a right to privacy in their biometrics, as well as the right to make informed decisions when electing to provide or withhold their most sensitive information and the terms upon which they do so.

25.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics.  BIPA also protects individuals' rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

## FACTUAL BACKGROUND

26.     Plaintiff worked for Defendant from April of 2008 to November of 2018.

27.     While Plaintiff was employed, Defendant purchased and/or leased biometric medication dispensing devices to be implemented and used in its healthcare facilities.

28.     When Plaintiff and others similarly situated scanned their handprints on Defendant's biometric medication dispensing devices when they were employed, Defendant captured, obtained and stored their handprints, or a representation derived therefrom, on its systems and databases.

6

29.     Even though Plaintiff has not been employed by Defendant for nearly a year and a half, Defendant has continued to store and possess Plaintiff's handprints and the biometric information derived therefrom.

30.     Even though Plaintiff has not been employed by Defendant for nearly a year and a half, and is therefore no longer authorized to access Defendant's biometric medication dispensing devices, Defendant has not destroyed Plaintiff's handprints and the biometric information derived therefrom.

31.     Since the end of her employment with Defendant, Plaintiff has not been informed of the purposes or length of time for which Defendant will store, possess and/or use her biometric identifiers and/or information.

32.     To date, Defendant has failed to develop, implement or adhere to any publicly-available retention schedule or destruction guidelines, as required by BIPA, 740 ILCS 14/15(a).

33.     These violations have raised a material risk that Plaintiff and other similarly situated individuals' biometric data could be unlawfully accessed by third parties.

34.     By and through the actions detailed above, Defendant disregards Plaintiff's and other similarly situated individuals' statutory rights in violation of BIPA.

35.     Plaintiff suffered an informational injury because Defendant failed to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature has created both a right and an injury. An individual has the right to receive certain information regarding a private entity's retention and destruction of his or her highly personal, private and proprietary biometric data. Conversely, the individual suffers injury when s/he does not receive this extremely critical information.

36.     Plaintiff has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the possession and retention of her biometric data; in the form of monetary damages as a result of being denied access to material information about Defendant's policies and practices; and in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

37.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, she seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *See Rosenbach v. Six Flags Ent. Corp.,* 2019 IL 123186, ¶ 40.

### CLASS ALLEGATIONS

38.     Plaintiff seeks to represent the following class of similarly situated individuals under BIPA:

> **All individuals who scanned their handprints in one or more of Defendant's biometric medication dispensing devices in Illinois, and who separated from employment with Defendant at any time from November of 2013 to the present.**

39.     This action is properly maintained as a class action because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     The claims of the Plaintiff are typical of the claims of the class; and,

D.     The Plaintiff will fairly and adequately protect the interests of the class.

### Numerosity

40.     The total number of putative class members exceeds forty (40) individuals. The exact number of class members may easily be determined from Defendant's database.

### Commonality

41.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been

harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

    A.    Whether Defendant collected or captured Plaintiff's and the Class's biometric identifiers or biometric information while employed by Defendant;

    B.    Whether Defendant properly informed Plaintiff and the Class of its purposes for possessing, storing, or using their biometric identifiers or biometric information subsequent to separation of employment;

    C.    Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information since the initial purpose for Defendant's collection of such has been satisfied;

    D.    Whether Defendant complies with any such written policy (if any);

    E.    Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

    F.    Whether Defendant's violations of BIPA were committed negligently;

    G.    Whether the violations of BIPA were committed intentionally and/or recklessly.

42.    Plaintiff anticipates that Defendant will raise defenses that are common to the class.

## **Adequacy**

43.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## **Typicality**

44.    The claims asserted by Plaintiff are typical of the class members she seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

45.     Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against an employer. However, if any such class member should become known, he or she can "opt out" of this action under applicable law.

### Predominance and Superiority

46.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

47.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of BIPA Section 15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

48.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

49.     BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention and, importantly, destruction policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (when the initial purpose for collecting has been satisfied); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

50.     Defendant fails to comply with these BIPA mandates.

51.     Defendant is registered to do business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

52.     Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant in the form of their handprints. *See* 740 ILCS 14/10.

53.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

54.     To date, Defendant has failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

55.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's or the Class's biometric data, even though they are no longer employed by Defendant and the initial purpose for collecting or obtaining such data has been satisfied.

56.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements when continuing to possess biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Gail Gray respectfully requests that this Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Gail Gray as Class Representative, and appointing Stephan Zouras, LLP, as Class Counsel;

B.     Declaring that Defendant's actions, as set forth above, violate BIPA;

C.     Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.     Declaring that Defendant's actions, as set forth above, were intentional or reckless;

E.     Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendant to collect, store, use and disseminate biometric identifiers or biometric information in compliance with BIPA;

F.     Awarding Plaintiff and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

H.     Awarding such other and further relief as equity and justice may require.

Date:   May 1, 2020                    Respectfully Submitted,

                                       /s/ Catherine T. Mitchell

                                       Ryan F. Stephan
                                       James B. Zouras
                                       Catherine T. Mitchell
                                       **STEPHAN ZOURAS, LLP**
                                       100 North Riverside Plaza, Suite 2150
                                       Chicago, Illinois 60606
                                       312.233.1550
                                       312.233.1560 *f*
                                       rstephan@stephanzouras.com
                                       jzouras@stephanzouras.com
                                       cmitchell@stephanzouras.com
                                       Firm ID: 43734

                                       ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on May 1, 2020, I filed the attached with the Clerk of the

Court using the ECF system, which will send such filing to all attorneys of record.

*/s/ Catherine T. Mitchell*