IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAIL GRAY, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | No. 1:19-cv-04229 |
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER, INC., | Judge Robert M. Dow, Jr. |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION**

**I.   INTRODUCTION**

On March 25, 2020, the Court granted Defendant The University of Chicago Medical Center, Inc.'s ("UCMC") Rule 12(b)(1) motion to dismiss Plaintiff Gail Gray's ("Plaintiff") First Amended Complaint for lack of subject matter jurisdiction. This Court found that as a member of a union, Plaintiff's claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"), required interpretation of a collective bargaining agreement, it appeared that Plaintiff did not exhaust her administrative remedies thereunder, and her claims were thus preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"). The Court allowed Plaintiff to amend one last time to correct the jurisdictional deficiencies if she could do so consistent with Federal Rule of Civil Procedure 11.

Plaintiff thereafter filed a Second Amended Complaint and moved to remand the case to state court in an effort to end run this Court's prior ruling and controlling Seventh Circuit precedent. In filing the Second Amended Complaint, Plaintiff purports not to replead her prior

claims under Sections 15(b) and (d) of BIPA. Instead, Plaintiff now seeks to avoid federal labor law preemption by repleading her claim under Section 15(a) and superficially paring it back to a cause of action for UCMC's alleged failure, *subsequent to her employment*, to develop, implement and adhere to a publicly available biometric data policy establishing a retention schedule and guidelines for permanently destroying biometric data. In doing so, however, Plaintiff cannot avoid the allegations throughout the Second Amended Complaint concerning the collection, possession and retention of her biometric data while she was a union member employee of UCMC, and the obvious question of whether the union consented to the same.

UCMC opposed Plaintiff's motion to remand and demonstrated that Article III standing exists with respect to the concrete and particularized injuries alleged in the Second Amended Complaint, which are the same injuries alleged in the First Amended Complaint. (Remand Opp. [56] at 6–12.) UCMC also demonstrated that the Second Amended Complaint invokes federal question jurisdiction with respect to collective bargaining and union consent to the collection of Plaintiff's and the proposed class members' biometric data, the continued possession of that data, and whether UCMC allegedly withheld information required to be disclosed in accordance with BIPA. (*Id.* at 12–15.) Plaintiff subsequently withdrew her remand motion after UCMC filed its opposition, thereby acknowledging the existence of Article III standing and federal question jurisdiction based upon LMRA preemption.

The reinvention of Plaintiff's cause of action under Section 15(a) is substantively no different than her prior pleadings and the same arguments support dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). The cause of action is preempted under Section 301 of the LMRA because claims involving the collection, possession or retention of biometric data, as well as the necessary consents and required disclosures in connection therewith, require interpretation of the management-rights provisions in the collective bargaining agreement. As this

Court previously ruled, Plaintiff's challenges to UCMC's practices and policies surrounding the medication dispensing system are the proper subject of collective bargaining and preempted under Section 301 of the LMRA. That decision is consistent with Seventh Circuit precedent and is directly applicable to the Second Amended Complaint.

That Plaintiff is no longer employed by UCMC or a union member does not avoid LMRA preemption. The operative allegations in the Second Amended Complaint all relate back to her employment, union membership and the collection and possession of her biometric data. The question of union consent and rights regarding the retention of biometric data require interpretation of the collective bargaining agreement to ascertain whether and when the initial purpose for collecting the data has been satisfied. Likewise, that Plaintiff now contends the cause of action is predicated upon a duty owed to the public and not subject to federal labor law preemption is untenable because the duty to disclose under Section 15(a) is not owed to particular persons like Plaintiff whose biometric data has been collected.

Plaintiff, moreover, is not a member of the public seeking to vindicate public rights. The Second Amended Complaint is replete with allegations regarding the collection and possession of her biometric data while she was a union member employee. The proposed class is comprised of those UCMC employees like herself who allegedly had their biometric data collected. In fact, according to Plaintiff, the Second Amended Complaint invokes common questions of law and fact as to whether UCMC collected or captured her and the proposed class's biometric data in compliance with BIPA. Plaintiff's prayer for relief likewise seeks an order requiring UCMC to collect, store, use and disseminate employee biometric data in accordance with the statute. Under these circumstance and consistent with the Court's prior ruling, whether UCMC failed to develop, implement or adhere to a biometric data policy—either during Plaintiff's employment or

thereafter—requires interpretation of the collective bargaining agreement and the cause of action under Section 15(a) must be dismissed with prejudice.

## II. BACKGROUND

Plaintiff worked as a registered nurse for UCMC from April 2008 to November 2018. (Sec. Am. Compl. [44] ¶¶ 2, 26.) Her duties included using a medication dispensing system with a finger scan security device. (*Id.* ¶¶ 3–5, 27.) Plaintiff used the finger scan device to access medications within the dispensing system. (*Id.* ¶ 5.) According to Plaintiff, UCMC collected, captured and stored her biometric data on its systems and databases when she enrolled her finger scan to use the medication dispensing system. (*Id.* ¶¶ 4–5, 28, 52.)

As an employee of UCMC, Plaintiff was a member of and represented by the National Nurses United/National Nurses Organizing Committee (the "Union") at all relevant times. (Declaration of Lattoya Jefferson ¶ 5, attached as **Exhibit 1**.) The Union was the exclusive bargaining agent for Plaintiff and other similarly situated employees for purposes of collective bargaining with UCMC regarding their wages, benefits and all other terms and conditions of their employment. (*Id.*) The terms and conditions of employment agreed to by UCMC and the Union are governed by a collective bargaining agreement ("CBA"). (*Id.* ¶ 6.)

The CBA contains management-rights provisions that specify UCMC's right to manage the medical center and clinics, including that "control of the premises, and the direction of the nursing force are vested exclusively in [UCMC]." (CBA at Art. 3, attached to Jefferson Decl. as Ex. A.) The CBA expressly recognizes that UCMC's right to manage includes such things as "to determine policies and procedures with respect to patient care; to determine or change the methods and means by which its operations are to be carried on; to establish and revise reasonable personnel rules and policies, including those related to employee conduct … ; [and] to carry out all ordinary functions of management …." (*Id.*) When a Union member and UCMC disagree regarding the

interpretation or application of any of the terms and provisions of the CBA, the Union member must utilize the CBA's four-step grievance and arbitration procedures. (*Id.* at § 8.1.)

Plaintiff alleges that UCMC's use of the finger scan device and its policies and practices surrounding the medication dispensing system violate BIPA. Among other things, Plaintiff alleges that UCMC continues to unlawfully store and possess her biometric data in violation of BIPA because her employment ended in November 2018 and she is no longer authorized to access the medication dispensing system. (Sec. Am. Compl. [44] ¶¶ 7, 9–10, 29.) Plaintiff alleges that UCMC has violated and continues to violate BIPA because it did not develop, implement or adhere to a publicly available retention schedule and guidelines for permanently destroying her biometric data. (*Id.* ¶¶ 10, 32, 49–50, 54–55.) Plaintiff further alleges that UCMC continues to violate BIPA because it has not destroyed and will not destroy her biometric data even though she is no longer employed by UCMC.[1] (*Id.* ¶¶ 30, 49–50, 55.)

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges a court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the

---

[1] Plaintiff similarly alleges that UCMC collected, captured and stored the biometric data of the proposed class members in violation of BIPA and that the Second Amended Complaint invokes common questions of law and fact as to whether UCMC properly informed Plaintiff and the proposed class of the purposes for possessing, storing and using their data in accordance with the statute subsequent to their employment. (Sec. Am. Compl. [44] ¶¶ 4–5, 28, 38, 41, 52.)

plaintiff's favor. *Id.* at 443–44. If, however, the complaint is formally sufficient, but a defendant contends that there is in fact no subject matter jurisdiction (a factual challenge), the court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted to determine whether in fact subject matter jurisdiction exists. *Id.* at 444 (citing *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)).

**IV. ARGUMENT**

    **A. Plaintiff's BIPA Cause of Action Requires Interpretation of the CBA and Is Preempted by Section 301 of the LMRA**

Section 301 of the LMRA preempts claims "founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Elec. Workers v. Hechler,* 481 U.S. 851, 859 n.3 (1987)). If the resolution of a state law claim depends on the meaning of, or requires interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute. *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996). A state law claim requires the interpretation of a collective bargaining agreement even where a single element of the claim requires a court to interpret any term of a collective bargaining agreement. *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015).

If a state law claim is preempted by Section 301, the claim may not proceed unless the plaintiff can demonstrate that he or she has complied with the procedural requirements of Section 301, including exhaustion of administrative remedies before bringing suit in federal or state court. *Mitchell v. Pepsi-Cola Bottlers, Inc.*, 772 F.2d 342, 347 (7th Cir. 1985); *see also Atchley*, 101 F.3d at 501 ("Federal law governing § 301 claims also includes a general requirement that employees must exhaust grievance and arbitration remedies provided in a collective bargaining agreement

before filing suit."); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1488 (7th Cir. 1985) ("[Plaintiff's] failure to at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement … bars his claim.").

Section 301 preemption covers not only obvious disputes over labor contracts, but also any claim "masquerading as a state-law claim that nevertheless is deemed really to be a claim under a labor contract." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 797 (7th Cir. 2013). This includes BIPA causes of action, including claims under Section 15(a). In *Miller v. Southwest Airlines Co.*, the Seventh Circuit addressed BIPA claims brought by union members in a consolidated appeal against their employer airlines for use of biometric timekeeping systems in violation of Sections 15(a), (b) and (d). 926 F.3d 898 (7th Cir. 2019). The plaintiffs contended that the air carriers implemented these systems without their consent, failed to publish protocols, and used third-party vendors to implement the systems. *Id.* at 901. The court held that the claims were properly dismissed because issues concerning timekeeping practices, including the collection of biometric data, consent to such collection, required disclosures and the retention and destruction of such data in accordance with BIPA, necessarily entail the interpretation of the management-rights clause in collective bargaining agreements and must be resolved by an adjustment board under the Railway Labor Act ("RLA"). *Id.* at 903–904.

In *Peatry v. Bimbo Bakeries USA, Inc.*, the court applied the same labor law preemption analysis to Section 301 of the LMRA in a case involving BIPA claims by a union member concerning the employer's use of a biometric timekeeping system. 2020 WL 919202 (N.D. Ill. Feb. 26, 2020). The claims involved the failure to institute, maintain and adhere to a publicly available biometric data policy, failure to obtain informed written consent and the disclosure of biometric data without consent in violation of Sections 15(a), (b) and (d). *Id.* at *1. As this Court likewise found, the court in *Peatry* determined that *Miller* governed resolution of the preemption

question because the RLA preemption standard is virtually identical to the preemption standard employed in cases involving Section 301 of the LMRA. *Id.* at \*3 (*citing Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994)). The court then dismissed the claims in part for lack of subject matter jurisdiction under Section 301 because resolution of the claims, during the time that the collective bargaining agreement was in effect, required interpretation of the management-rights provisions and the plaintiff had not submitted any grievance or request for arbitration as required by the collective bargaining agreement. *Id.* at \*3–4.

As in *Miller* and *Peatry*, Plaintiff challenges UCMC's practices and policies surrounding the medication dispensing system and each of these cases included a cause of action under Section 15(a). Moreover, consistent with *Miller* and *Peatry*, Plaintiff was a member of the Union while employed by UCMC and the Union acted as her legally authorized representative for BIPA purposes, including with respect to the collection of her biometric data, required consents, mandatory disclosures and the retention and destruction schedules for the data. *Gray v. The Univ. of Chicago Med. Ctr.*, 2020 WL 1445608, at \*4 (N.D. Ill. Mar. 25, 2020). Each of these matters are the proper subject of collective bargaining pursuant to the management-rights provisions in the CBA, which are substantially the same as the clauses in the collective bargaining agreements at issue in *Miller* and *Peatry*.

Nowhere, however, has Plaintiff alleged (and cannot plead) that she pursued her claims using the four-step grievance and arbitration procedures in the CBA. *Gray*, 2020 WL 1445608, at \*4–5 ("The initial forum for Plaintiff to bring her claims was specified in the grievance procedures laid out in the CBA. There is no evidence before the Court that Plaintiff followed those procedures … This suggests that dismissal is the appropriate disposition."). Accordingly, as this Court previously held, under *Miller* and for the reasons stated in *Peatry*, Plaintiff's cause of action under Section 15(a) is preempted by Section 301 of the LMRA and must be dismissed. *See also*

*Fernandez v. Kerry, Inc.*, 2020 WL 1820521, at *5–6 (N.D. Ill. Apr. 10, 2020) (denying motion seeking remand based on lack of subject matter jurisdiction under the LMRA because, as made clear in *Miller*, it is not possible to resolve a dispute over fingerprint time clocks without reference to the collective bargaining agreement); *Crooms v. Sw. Airlines Co.*, 2020 WL 2404878, at *6 (N.D. Ill. May 12, 2020) (following *Miller* and dismissing BIPA claims by former union-member employees based on RLA preemption for alleged failure to make, provide and follow a retention schedule and guidelines for the permanent deletion of biometric data and obtain informed written consent before collecting biometric data).[2]

### B. Unlawful Retention of Biometric Data Is Not Excluded from LMRA Preemption because Plaintiff Is a Former Employee

Plaintiff argued in her remand motion that federal labor law preemption does not apply to the cause of action under Section 15(a) because her membership in the Union terminated when her employment with UCMC ended in November 2018. According to Plaintiff, the CBA no longer governs because her claim is limited to conduct that occurred exclusively post-employment. (Remand Motion [45] at 2, 5–6.) This is not a new claim, as Plaintiff alleged in the First Amended Complaint that UCMC did not adhere to a retention schedule and guidelines for permanently destroying her biometric data when the initial purpose for collecting the data had been satisfied. (First Am. Compl. [21-1] ¶¶ 36, 71–72, 77.) Based in part on those allegations, the Court correctly held that Section 301 of the LMRA preempted the claim because it required interpretation of the

---

[2] The Second Amended Complaint also implicates the CBA's wage provisions and cannot be resolved without interpreting those provisions to the extent Plaintiff alleges that she suffered actual and ongoing harm for the value of the possession and retention of her biometric data. *Miller v. Sw. Airlines Co.*, 2018 WL 4030590, at *5 (N.D. Ill. Aug. 23, 2018) ("Plaintiffs' BIPA claim cannot be resolved without interpreting the wage provisions of the CBAs and the relevant bargaining history to determine whether the wages TWU 555 and Defendant negotiated were intended to compensate employees for all conditions of their employment, including use of the biometric timekeeping system.").

CBA to determine (among other things) whether the Union consented to the continued storage of Plaintiff's biometric data. *Gray*, 2020 WL 1445608, at *4–5.

Plaintiff's theory of recovery also is belied by her own allegations, which confirm that her cause of action necessarily relates back to her employment and Union membership. UCMC cannot unlawfully retain Plaintiff's biometric data without collecting and possessing the data. Accordingly, whether Plaintiff through Union representation consented to the continued possession of her biometric data subsequent to employment is subject to the management-rights provisions in the CBA to ascertain whether and when the initial purpose for collecting the data has been satisfied. 740 ILCS 14/15(a).

In *Crooms*, for example, the court rejected the plaintiffs' attempt to bypass RLA preemption by paring back their BIPA claims to a period of employment postdating their union membership when they were not covered by a collective bargaining agreement. 2020 WL 2404878, at *5–6. Similar to the circumstances in this case, the court rejected the attempt because the allegations in the amended complaint repeatedly referred to the collection and possession of biometric data when the plaintiffs were union members. *Id.* at *6 (adding that plaintiffs' position is especially tenuous given the allegations in their own complaint wherein they allege enrollment and scanning their fingerprints "when Southwest hires an employee").

The exact same allegations regarding collection and possession of biometric data while Plaintiff and the proposed class members were Union member employees are set forth in the Second Amended Complaint. Consistent with this Court's prior ruling and the subsequent decision in *Crooms*, the question of consent through Union representation and rights regarding the retention of Plaintiff's biometric data require interpretation of the CBA. The claim is therefore preempted by Section 301 of the LMRA and must be dismissed notwithstanding the fact that Plaintiff is no longer employed by UCMC. *See also Miller*, 926 F.3d at 903–904 (finding that questions

concerning union consent to the retention of biometric data and whether defendants are following the statutory data-retention limit in accordance with BIPA require interpretation of collective bargaining agreement and federal labor law principles must be employed to resolve the dispute); *Healy*, 804 F.3d at 841 ("A state law claim requires the interpretation of a collective bargaining agreement when an element of the claim requires a court to interpret any term of a collective bargaining agreement.") (internal quotation and citation omitted).

### C. Lack of a Biometric Data Policy Is Not Excluded from LMRA Preemption because the Duty Is Owed to the Public

Plaintiff similarly argued in her remand motion that federal labor law preemption does not apply because the requirement to have a biometric data policy under Section 15(a) is a duty owed to the public generally. (Remand Motion [45] at 2, 4–5; Mot. for Leave to File Notice of Suppl. Auth. [47] at 1–2; Mot. for Leave to File Second Notice of Suppl. Auth. [52] at 1–2.) Plaintiff cannot avoid LMRA preemption on such a contrived and artificial basis. First, the cause of action under Section 15(a) is not viable to the extent based upon lack of a publicly available retention schedule and guidelines for permanently destroying biometric data. As the Seventh Circuit determined in *Bryant v. Compass Group USA*, the duty to disclose under Section 15(a) "is owed to the public generally, not to particular persons whose biometric information the entity collects." 2020 WL 2121463, at *7 (7th Cir. May 5, 2020). Plaintiff, accordingly, cannot rely upon this aspect of her cause of action to avoid preemption.

Second, Plaintiff is not a member of the public and she is not seeking to vindicate public rights. Plaintiff was a UCMC employee when her biometric data was allegedly collected, and the informational requirements of Section 15(a) for the general public are the same as the information required to be disclosed to Plaintiff under Section 15(b) to enable informed written consent. *Cothron v. White Castle Sys., Inc.*, 2020 WL 3250706, at *3 n.3 (N.D. Ill. June 16, 2020). This is

underscored by the proposed class definition, which includes all UCMC employees who had their biometric data collected by scanning their handprint since November 2013, and the common questions of law and fact as to whether UCMC collected or captured Plaintiff's and the proposed class's biometric data in compliance with BIPA. (Sec. Am. Compl. ¶¶ 38, 41.) This is further highlighted by the prayer for relief, which seeks an order requiring UCMC to collect, store, use and disseminate employee biometric data in compliance with BIPA. (*Id.* at 12.) The only claim available to Plaintiff under these circumstance is for the collection of biometric data without providing the required notice and obtaining a written release. 740 ILCS 14/15(b).

Third, Plaintiff's cause of action under Section 15(a) is not a different claim from her prior pleadings. Plaintiff alleged in the First Amended Complaint that UCMC violated BIPA by not providing a publicly available retention schedule and guidelines for permanently destroying her biometric data. (First. Am. Compl. [21-1] ¶¶ 34, 36, 71–72, 76.) Plaintiff also was a former employee when she first brought suit and alleged continuing or ongoing violations that occurred during and subsequent to her employment with UCMC. (*Id.* ¶¶ 11(b), 41, 46.) There simply is nothing in the Second Amended Complaint that warrants an outcome different from the Court's previous decision, and her cause of action under Section 15(a) must be dismissed because it is subject to LMRA preemption. *Gray*, 2020 WL 1445608, at *4–5.[3]

---

[3] *See also Crooms*, 2020 WL 2404878, at *6 (holding that claim based on alleged failure to make, provide and follow a retention schedule and guidelines for the permanent deletion of biometric data in violation of Section 15(a) is preempted by the RLA); *Peatry*, 2020 WL 919202, at *4 (finding that claim based on the alleged failure to institute, maintain or adhere to a biometric data policy in violation of Section 15(a) is preempted by Section 301 of the LMRA); *Fernandez*, 2020 WL 1820521, at *5–6 (denying motion to remand for lack of subject matter jurisdiction because claim predicated upon the alleged failure to provide a retention schedule and guidelines for permanently destroying biometric data in violation of Section 15(a) is subject to LMRA preemption); *Frisby v. Sky Chefs, Inc.*, 2020 WL 4437805, at *4 (N.D. Ill. Aug. 3, 2020) (dismissing BIPA claim that defendant never published protocols for retention and destruction of employee fingerprint data based on RLA preemption).

## V.    CONCLUSION

For all the foregoing reasons, Defendant The University of Chicago Medical Center respectfully requests the Court to grant its motion to dismiss for lack of subject matter jurisdiction with prejudice.

    Respectfully submitted,

    THE UNIVERSITY OF CHICAGO
    MEDICAL CENTER

    By:  /s/ Joseph A. Strubbe

    Joseph A. Strubbe
    Frederic T. Knape
    Zachary J. Watters
    Vedder Price P.C.
    222 North LaSalle Street
    Chicago, Illinois 60601
    312/609-7500
    jstrubbe@vedderprice.com
    fknape@vedderprice.com
    zwatters@vedderprice.com

    *Counsel for Defendant The University of Chicago Medical Center*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that the foregoing **Defendant's Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint for Lack of Subject Matter Jurisdiction** was electronically filed with the Clerk of Court on August 11, 2020 using the CM/ECF system that will send notification of the filing to all parties of record.

/s/ Joseph A. Strubbe